Forrest Gene ENGLISH,
Plaintiff–Appellant,

v.

William J. COWELL, et al.,
Defendants–Appellees.

No. 92–4032.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 17, 1993.

Decided Nov. 12, 1993.

Paul A. Levy (argued), Alan B. Morrison, Public Citizen Litigation Group, Washington, DC, for plaintiff-appellant Forrest G. English.

Michael W. O'Hara (argued), Cavanagh & O'Hara, Springfield, IL, for defendants-appellees Charles J. Connor, Donald Siddens, William J. Cowell and Local Union No. 46, Intern. Ass'n of Bridge, Structural and Ornamental Iron Workers.

Before POSNER, Chief Judge, CUMMINGS, Circuit Judge, and ZAGEL, District Judge.[*]

ZAGEL, District Judge.

Forrest G. English, who is also known as Guy Levine, challenges a district court order dismissing his suit for failure to join an indispensable party and for failure to sue in the proper name. This order was entered before any brief in opposition to the pending motion was filed, indeed, five days before the opposition brief was due. Because the district court deprived English of any opportunity to respond to the pending motion to dismiss and/or summary judgment, a deprivation we cannot say was harmless, we vacate the dismissal and remand the case with directions that English be afforded a reasonable opportunity to resist the defendants' motion.

English has been here before. Since the late 1970's, he has filed thirteen *pro se* complaints against Local 46 ("Local 46") of the International Association of Bridge, Structural, and Ornamental Iron Workers ("International"), alleging violations of the Labor–Management Reporting and Disclosure Act ("LMRDA"). This is the only case still pending. English was a member of Local 46 until December 27, 1983, when William J. Cowell (President of Local 46) and Donald Siddens informed English by letter that his union membership was terminated. English had received no prior notice of any impending membership termination. The letter (dated December 27, 1983, printed on Local 46 letterhead, and addressed to Forrest English) read as follows:

> We have noted the fact that you are convicted of a felony and are serving a long term in prison.
>
> In view of this, your membership in the local union has been terminated effective immediately. You already have a copy of the Constitution and By–Laws of the International Union and the Local Union.
>
> Please do not send any further dues or money of any nature or kind whatsoever to the local union. Any further attempts to send dues to the local union will be returned to you.

English had been convicted of a felony and began serving his sentence in February 1980. Nevertheless, English routinely sent in, and Local 46 unquestionably accepted, his membership dues until his expulsion.

English quickly filed this action against Local 46 and International, challenging his expulsion as a violation of his due process rights under the LMRDA, 29 U.S.C. § 411(a)(5), and alleging a conspiracy among various officers of Local 46 and International "to rid themselves of English." Although International was named as a defendant, English never perfected service on International.[1] Judge Mills eventually dismissed International "[b]ecause no good cause has been shown why service was not made [timely] . . . or why Plaintiff did not move for a continuance of that time period or make any attempt

---

[*] The Honorable James B. Zagel, District Judge for the Northern District of Illinois, is sitting by designation.

1. English sent a complaint to International on February 14, 1986, but no acknowledgement of service was returned. English then filed a "Re-

quest for Order that U.S. Marshall Serve Summons and Complaint Upon Defendant [International]" on July 7, 1986. Judge Mills denied this request because it was filed more than 120 days after the filing of the complaint and after the time for service had expired on May 4, 1986.

to begin alternative service." English did not appeal this dismissal.

Local 46 answered the complaint; it did not raise a defense based on either the failure to join an indispensable party or the failure to sue in a proper name (perhaps because it did not know about English's other name at that time). Judge Mills entered several orders to control discovery and ultimately stayed further discovery. Judge Mills then dismissed the case as filed outside the six-month limitations period that this Court held was applicable to § 101 of LMRDA in *Vallone v. Local Union No. 705, Int'l Brotherhood of Teamsters,* 755 F.2d 520 (7th Cir.1985). *English v. Cowell,* 117 F.R.D. 137 (C.D.Ill.1987). We affirmed,[2] and the Supreme Court granted *certiorari.* Then the Supreme Court rejected the six-month limitation in *Reed v. United Transp. Union,* 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989), and vacated the judgment against English. *English v. Siddens,* 493 U.S. 801, 110 S.Ct. 37, 107 L.Ed.2d 8 (1989).[3]

The second time around, the case was dismissed on grounds the district court raised *sua sponte,* to wit, that English's expulsion was not discipline but an "objective reclassification" of his membership status and that, even if considered a disciplinary measure, his due process rights were not violated since he received due process during his criminal trial and his conviction constituted sufficient evidence to support his expulsion under § 101(a)(5) of LMRDA. *English v. Siddens,* 751 F.Supp. 1343, 1347–48 (C.D.Ill.1990).

We reversed and remanded again. *English v. Cowell,* 969 F.2d 465 (7th Cir.1992). We held that English's expulsion was an act of discipline (whether or not labelled by the union as such), taken pursuant to the union's right to control the member's conduct, and he was entitled to due process. Expressing no opinion as to the validity of the union's ultimate decision, we held that the union's need to provide due process protection was not obviated by the fact that English was lawfully convicted of a felony. The union had to comply with the mandatory procedural protections of § 101(a)(5). If it did, only then would we consider whether its disciplinary decision was supported by "some evidence."

Moreover, we refused to affirm the dismissal on the alternative grounds that International was a necessary and indispensable party and that English, who filed suit in his birth name instead of his legal name, was not a proper party. We wrote:

> First, with regard to the claim that Mr. English's alleged pseudonym makes him an improper party to this suit, we note that the record is unclear on what Mr. English's name actually is. Indeed, his deposition testimony suggests that he has legally changed his name from Guy Levine to Forrest English. In addition, the defendants do not claim that they have been confused or otherwise prejudiced by Mr. English's decision to sue as Forrest English, rather than Guy Levine. We accordingly decline to dismiss this case based on that argument. This matter is left to the district court's sound discretion.
>
> Second, we disagree that this case should be dismissed for plaintiff's failure to serve the Iron Workers' International. Except for averring that the International is a "necessary" and "indispensable" party, the defendants offer no explanation for why failure to serve, within the facts of this case, requires dismissal. Absent a more detailed justification for this assertion, we shall not dismiss this suit for failure to serve.

*English,* 969 F.2d at 468 n. 6 (citations omitted).

---

2. *English v. Siddens,* 863 F.2d 885 (7th Cir. 1988).

3. The Supreme Court remanded the case to the Seventh Circuit for reconsideration of the statute of limitations issue. We, in turn, reversed in part and remanded. *English v. Siddens,* 899 F.2d 16 (7th Cir.1990). On remand, the district court determined that Illinois's two-year statute of limitations for personal injury actions barred some of English's claims, but not his due process claim for his expulsion in violation of LMRDA § 101(a)(5). *See English v. Cowell,* 969 F.2d 465, 467–68 & n. 4 (7th Cir.1992) (discussing history of the case).

On the third time around, Judge Mills directed the parties to file motions for summary judgment as to whether English received due process under LMRDA § 101(a)(5), but did not set deadlines for these filings. On October 19, 1992, the parties were ordered to file dispositive motions by October 28, 1992. English requested an extension of time, explaining that he had just retained counsel, intended to file affidavits in support of his position, and might seek discovery depending on Local 46's arguments. The deadline was extended to November 16, 1992.

On November 16, 1992, both parties served cross-motions. Local 46 filed a motion to dismiss and/or summary judgment, claiming: (1) English was not a proper party, that the suit filed under a pseudonym was a nullity and the claim was barred under the statute of limitations; and (2) International was a necessary and indispensable party whose absence required dismissal of the case. English sought summary judgment on liability for a violation of due process.

On November 25, 1992, before any briefs in opposition were filed or due, Judge Mills granted Local 46's motion to dismiss, denied English's motion for summary judgment, and entered final judgment terminating the case. There were two grounds: (1) Rule 10(a) required English, who legally changed his name to Guy Levine on April 5, 1974, to commence this action under his true name (and no exception to this rule applied); (2) English failed to serve timely International, which was a necessary and indispensable party under Rule 19 because it directed Local 46 to expel English and its absence would prejudice the remaining parties in the case. English appeals.

In ruling on dismissal, the district court considered matters outside the pleading. This the court may do either by treating a motion to dismiss for failure to state a claim as a motion for summary judgment or by resolving factual questions pertaining to jurisdiction, process, or indispensable parties. *See Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir.1993). Here, the dismissal was based on grounds other than the failure to state a claim, so there was no conversion of a motion to dismiss into a motion for summary judgment. *See Crawford v. United States*, 796 F.2d 924, 928 (7th Cir.1986) ("The omission ... of a provision for converting a Rule 12(b)(1) motion into a summary judgment motion ... was not an oversight."). When a court treats a dismissal motion as a summary judgment motion, it must give the nonmovant a "reasonable opportunity" to contradict the material facts asserted by the movant. Rule 12(b) says this, but it says nothing about a "reasonable opportunity" to contradict when dismissal motions are not treated as summary judgment motions.

Nonetheless, we can think of no reason to justify the denial of an opportunity to respond to a dispositive dismissal motion which entails consideration of extra-pleading evidence. Unless a claim is frivolous, it is rudimentary that a court cannot *sua sponte* enter summary judgment or dismiss a complaint without notifying the parties of its intentions and allowing them an opportunity to cure the defect in the complaint or to respond. *Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1183–85 (7th Cir.1989); *Sawyer v. United States*, 831 F.2d 755, 759 (7th Cir.1987) ("Granting summary judgment *sua sponte* warrants special caution" and may be granted only if the " 'outcome is clear, so long as the opposing party has had an adequate opportunity to respond'."). Nor can a court, upon motion by a party, dismiss a complaint with prejudice without affording the plaintiff a reasonable opportunity to present arguments (oral or written) or evidence relevant to the challenged defect in pleading. *Cooper v. United States Penitentiary*, 433 F.2d 596 (10th Cir.1970); *Karl Kiefer Mach. Co. v. United States Bottlers Mach. Co.*, 113 F.2d 356, 357 (7th Cir.1940). Similarly, a nonmovant must be afforded an opportunity to present contradicting affidavits or materials in order to cure a jurisdictional or party defect not capable of being resolved on the words of the complaint. *See Fountain v. Filson*, 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971 (1949).

The opportunity to respond is deeply imbedded in our concept of fair play and substantial justice. The Central District Court's Local Rule 16(B) explicitly reserves a mini-

mum of fourteen days after service of a motion in which to file responsive briefs, and this is not a case in which the district court could presume the motion was unopposed. English said he wanted to answer any motion filed by Local 46 when he requested an extension of the deadline for filing summary judgment motions.[4]

■ English's cross-motion on the issue of a violation of due process did not, and should not, discuss whether English was a proper party or whether International was a necessary and indispensable party. The cross-motion could not, in this case, serve as English's opportunity to respond to Local 46's motion. *Indiana Port Comm'n v. Bethlehem Steel Corp.*, 702 F.2d 107, 110 (7th Cir.1983) (judge's order setting deadline for all summary judgment motions was not "an absolute requirement that the parties both move for summary judgment on all issues in the case and use their main motions ... as [ ] vehicle[s] for responses to any argument they anticipated their opponents would make"); *Macklin v. Butler*, 553 F.2d 525, 528 & n. 2 (7th Cir.1977).

■ Local 46 argues that English was unharmed because any attempt by English to respond would have been futile since English basically squandered his opportunity to obtain discovery on this issue and, now that discovery has been stayed, English cannot oppose the motion with counter-affidavits or other evidence not already part of the record. The harmless error doctrine saves premature rulings when the district court is found to have entertained the nonmovants' arguments on a prior or subsequent motion, such as a motion to reconsider or for relief from judgment. *Gibb v. Scott*, 958 F.2d 814, 816–17 (8th Cir.1992). *See Deutsch v. Burlington N. R.R. Co.*, 983 F.2d 741, 745 (7th Cir.1992);

*Ikerd v. Lapworth*, 435 F.2d 197, 203 (7th Cir.1970) (court heard consolidated case in which "the controlling undisputed facts and the applicable law [we]re identical"). Here, English never briefed the issues raised in Local 46's motion either on a prior motion or a motion for relief from judgment, and his inability to file a response resulted in dismissal of an eight-year-old claim on which the limitations period had expired.

■ More importantly, remand is warranted because the harmless error doctrine does not save premature rulings when the loser did have something substantial to say in opposition. *Compare Indiana Port Comm'n*, 702 F.2d at 111 n. 2. *with Kincaid v. Vail*, 969 F.2d 594, 599 (7th Cir.1992). The ruling that International was an indispensable party depended on a letter sent by Juel D. Drake (International's General Secretary) to William Cowell, which read as follows:

Enclosed is a recommended letter for you to send to Forrest English forthwith. You should send a blind carbon copy to the International office.

Furthermore, any telephone or written communication from Forrest English to the Local Union from this point should be referred to your local union attorney and the local union should engage in no further correspondence or other forms of communication with Mr. English or any of his representatives. Please ask your attorneys to communicate with General Counsel Victor Van Bourg ... [to] discuss future legal ramifications....

The district court said this letter directed the expulsion of English and Local 46 merely performed a ministerial task.[5]

Local 46's indispensability argument is two-fold. First, International is an indis-

---

**4.** English calculates that his response was due December 3, 1992. Local 46 does not dispute this. We calculate using Federal Rule of Civil Procedure 6(a) that English's response was due November 30, 1992, since the fourteenth day fell on a Monday and all weekend days and holidays must be included in the computation. Judge Mills ruled on November 25, 1992, five days before any response was due.

**5.** Judge Mills focused on this Court's prior ruling in which we refused to affirm dismissal on the

ground that Local 46 had not presented "a more detailed justification" for why International was a necessary and indispensable party. Judge Mills noted that, on remand, Local 46 filled this void and presented evidence "that it was the International union who specifically directed the local union to expel the Plaintiff from the union." According to Judge Mills, the letter conclusively established that English's cause of action was against International and not Local 46.

pensable party because the General Secretary directed English's expulsion under Article XIX, § 14, for failure to get a withdrawal card. Article XIX, § 14, requires union members to take out a withdrawal card whenever they are not working, seeking work, or on layoff status, or be expelled. International's General Secretary has discretion to enforce or waive this provision. Local 46 contends that Drake exercised his discretion to enforce this provision when he sent the letter to Cowell directing English's expulsion. Alternatively, International is an indispensable party because English challenges whether his felony conviction compelled expulsion for lack "of good moral character" under Article II, § 2, thereby requiring an interpretation of International's constitution.

English argues that the use of the words "recommended" and "should be referred" in Drake's letter indicates a recommended course of action and, thus, does not reduce Local 46's actions to a mere ministerial task. He intimates that International's letter may have been sent in response to Local 46's inquiry as to whether expulsion was proper and legal. Furthermore, English emphasizes that the letter only mentions his status as a convicted felon, suggesting that Local 46 terminated his membership because he did not satisfy the "good moral character" requirement in Article II of International's constitution, not because he failed to take out a withdrawal card under Article XIX, § 14, during his prison term. Arguably then, English's expulsion was not solely the result of the General Secretary's exercise of discretion under Article XIX, § 14, and Local 46 did

more than carry out the rubber-stamp task of mailing the letter. English proposes some apparently relevant discovery to be taken on the history, purpose, and previous applications of the expulsion provisions which will reveal Local 46's involvement in the decision to terminate his membership. English's arguments are not so weightless that the failure to consider them is harmless.

English also disputes that International is a necessary and indispensable party by virtue of the fact that an interpretation of International's constitution is at issue. Local 46 urges that International must be a party to this suit because the propriety of English's expulsion depends on an interpretation of International's constitution, i.e., whether a felony conviction *ipso facto* establishes a lack of "good moral character" within the meaning of Article II, § 2. Local 46's indispensability argument is premised on *Krulikowsky v. Metropolitan Dist. Council*, 270 F.Supp. 122 (E.D.Pa.1967), in which a union member filed suit against the local union and the local district council for an alleged improper expulsion from the union and the district court found the international union to be an indispensable party.[6] Unlike the plaintiff in *Krulikowsky*, English insists he does not seek to have a provision of International's constitution declared invalid, but rather to have it declared that Local 46's application of the constitution denied him due process. English challenges a rule of law that international unions must be parties to every suit questioning a local union's interpretation or application of the its constitution. This too is an open question with arguments on both sides.[7]

---

6. The *Krulikowsky* court found that the plaintiff's claimed right to slander other members "squarely places in issue the validity of certain of the provision of the [Brotherhood's] constitution" and "necessarily involve[s] a ruling that the relevant provision of the Brotherhood's governing statutes is invalid." The court determined that the Brotherhood, therefore, "ha[d] a definite interest in maintaining the integrity of its organization ... [and] would be running the risk of the Court[ ] holding part of those laws invalid without having been a party to the suit." *E.g., Smith v. American Fed'n of Musicians*, 46 F.R.D. 24 (S.D.N.Y.1968) (Brotherhood of Carpenters is an indispensable party when the validity of its constitutional provisions is at issue).

7. English also disputes that any prejudice is self-imposed because English failed to serve timely International and did not appeal International's dismissal from the case. He urges that his decision not to appeal International's dismissal is analogous to choosing to sue one joint tortfeasor over another and that any prejudice to Local 46 could have been obviated by impleading International. *See Reed v. United Transp. Union*, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1988) (analogizing to state tort law to interpret provisions under LMRDA).

Finally, English says that a district judge has no discretion under Rule 10(a) to dismiss complaints filed under a plaintiff's birth name instead of his legal name, when there is no question as to the identity of the proper party. English argues that a violation of Rule 10(a) is "merely a formal error and never should be viewed as a fatal defect." 5 Wright & Miller, *Fed. Practice & Procedure: Civil* § 1321 at 730 & n. 12 (2d ed. 1990). It is proper, English insists, for a person to use his birth name after adopting a new name for a period of time, to effect legal process under any name so assumed, and to use either name in legal process without affecting its validity. Illinois follows the common law of names which does permit all these things. *See In re Leibowitz,* 49 F.Supp. 953, 954 (N.D.Ill.1943); *Thomas v. Thomas,* 100 Ill. App.3d 1080, 56 Ill.Dec. 604, 605, 427 N.E.2d 1009, 1010 (1981); *Hirschfeld v. United States,* 54 F.2d 62, 63 (7th Cir.1931); *United States v. McKay,* 2 F.2d 257, 259 (D.Nev. 1924). Had he been allowed to respond, English says he would have established that he is still commonly known as "English," his union membership was under the name "English," and Local 46 used the name "English."

English emphasizes that neither the district court nor Local 46 cited any support for dismissal for violation of Rule 10(a). Every case under Rule 10(a) English has found:

> involved the issue of whether a party is entitled to file an action anonymously, and what proof is necessary to offset the strong public interest in knowing who has filed a particular suit (and even then, most rulings cited by the union simply required the plaintiffs to disclose their real names; and only one decision dismissed the complaint).

He urges that there is no question of anonymity here. Local 46 knew, maybe too well, who English was. Finally, English insists, Local 46 was not prejudiced by this technical defect which could have been cured by in-

cluding the name "Levine" in the complaint, such as by an a/k/a reference.[8] This last issue is also fairly debatable.

English was entitled to an opportunity to be heard before dismissal of his claims. This opportunity must be afforded, not on appeal, but at the district court and, therefore, we express no opinion on the merits of English's arguments. We simply find that because English was deprived of any opportunity to espouse relevant arguments in the court below and remand would not amount to a waste of judicial resources, we must vacate the dismissal order and remand the case.

English asks that this Court exercise its discretion under Circuit Rule 36 and instruct the district court on remand to assign a different judge to the case. Local 46 does not oppose this request. The record indicates that Judge Mills may have developed an impatience with English. Though such a reaction is understandable when one considers the entire corpus of English's litigation, we judge it appropriate that the case be reassigned to another judge on remand.

Both parties have raised other arguments to support affirmance or reversal. We have considered each of them but none is persuasive or worthy of discussion in this opinion.

We VACATE the dismissal order and RE-MAND the case with directions that English be afforded a reasonable opportunity to resist the defendants' motion to dismiss and/or summary judgment. Circuit Rule 36 shall apply on remand.

---

**8.** Local 46 claims prejudice by English's failure to sue in his true name. Apparently, "English" was sanctioned in this case and in prior cases, but has never "acknowledged" that he is liable for such sanctions. Local 46 says it cannot enforce these sanctions because English holds real

property as Guy Levine. We find it difficult to believe that a court would not enforce these sanctions against the plaintiff either as English or as Guy Levine given that English admits that English and Guy Levine are one and the same.